Gellman v. State Farm Good morning, Your Honors. Patrick Lockhart on behalf of the appellant, Bruce Gellman. I'd like to reserve five minutes. All right. Your Honors, the Fair Credit Reporting Act provides a limited statutory exception to the general rule that companies cannot obtain our consumer information without our written authorization. The exception that is at issue in this case is the firm offer of insurance exception. The statute does permit an insurance company to obtain consumer information so long as the insurer makes a firm offer of insurance. Do we look at offers of credit different from offers of insurance? I don't believe there's any statutory authority to do that because the two of them are defined within the same definition. The statute talks about collateral as being one of the three exceptions that would not preclude a legitimate offer being made, and that I don't think would apply in any context to the insurance offer, but it would apply to an issue of credit, wouldn't it? So under the statute, there does seem to be some consideration of the distinction between what an insurer may need and what a lender may need and why the credit report would be appropriate. Well, you can put your home up as collateral on a homeowner's insurance or credit mortgage insurance, if I'm not mistaken. All right, I was thinking of life insurance, not back end insurance. Well, it wouldn't be collateral. That's what you're actually insuring. You're insuring your life to pay the debt on the house. You're using collateral in that sense. It's not that important, but I guess I'm not sure if that's right or not, but it doesn't really matter. And I think, and I don't know the name of the case, but it is ultimately the property of the human that is the loss if it's at risk there. But I hope I answered your question. Okay, it's not that important, but I was just curious. Hasn't the Federal Reserve made in a report to Congress a distinction between insurance and an offer of credit? There is a note in the State Farm's brief regarding that. However, what the Congress has said is that you must make a firm offer, and when and how you must do it is at issue in this case. Yeah, but they define firm offer in a way, and this is not first-year contracts. This is a very different kind of offer than we're used to seeing with Blackacre. And I, when I was back there, had not seen the statute in this contract before. I was surprised to see it, but they specifically allow for the kind of offer which I think the ordinary person and probably even the ordinary lawyer would look at and say that's a solicitation for business. That's not an offer of insurance at all, or that's not an offer of credit. That's solicitation of business or an advertisement. But they specifically include within the statute a provision to allow some kinds of communications which might otherwise be deemed to be solicitations to be made as a quote offer. And you might disagree with that, but it seems to me that the context in the statute, the way it's worded, allows for some communications to be viewed as offers that are not under the technical contract law version or definition of what an offer is. And I'm not disagreeing with either of your honors on that point. However, what I am disagreeing with you is that the conditions that can accompany, that are statutorily permissible, the pre-selected criteria, those are things that must be established before the offer is made, that the consumer then has to meet. How can they be made beforehand? Aren't they by definition checks on the consumer that require post-hope verification? And that's what the statute says. No, I respectfully disagree. 1681A, L1, requires before the selection of the consumer for the offer, 1A. Now, what happens is that the carrier sets those criteria and then they can get to the monetary terms of what the premium will be or what have you. What about 2? I'm sorry. What about 2 on verification? Verification means after the consumer applies, the carrier takes a look at the consumer report, sends out the mailer at issue, the consumer responds, there's a process, and so at the time that the deal, the offer is consummated. It's post-offer, isn't it? But the terms that the consumer is meeting has to be set by the carrier prior to the offer being made, and that's clear in Part A. If I could, because this whole discussion here was raised in the case that State Farm supplemented to the court by Letter April 28, Supplemental Authority. It's actually a combination of three cases in one opinion by Judge Easterbrook and Bruce v. Keybank, which is the middle plaintiff in there, talks about these criteria and criticizes the plaintiff, Bruce, in that case for not doing discovery to see if Keybank had those criteria set up and all that. And it raises an interesting point in this insurance firm offer context. How does a plaintiff who claims this is a mere solicitation, it is not a firm offer because it doesn't have all the criteria, ever prove that if you're thrown out on 12b-6, motion to dismiss? The carrier can come in and say, looking at our mailer with its terms, which I respectfully submit is clearly not an offer in the lax law dictionary sense of the word. State Farm then says, well, we are statutorily authorized to have these other criteria which can be met. Now, we contend and plead that they didn't, that they were using this as a pretext to just make solicitations for business. We can never prove that, and I haven't found a case where the court has addressed who has the burden there. And I respectfully submit, and quite frankly, the case that they sent to the court, which is 3-1, criticizes the plaintiff, Bruce, for waiving his ability to go discover whether they had that criteria established where he could challenge and support his argument that it was a sham offer, and Bruce lost. However, we didn't. We didn't get the chance to go into discovery. So that would be a consideration that I'd ask the court to give scrutiny to. I'd like to turn back, if I could, to the mailer and to the statute, the permissible purpose. It is a narrow permissible purpose that you make a firm offer of insurance after you peak at the credit report. And when you look at this defendant, State Farm Mutual Automobile Insurance Company, their mailer, and I'll give them the benefit of the doubt, although I do not agree to it, that they're making some kind of offer of auto insurance. When you have the amicus property insurance industry here sitting with us, this credit taking a look is very important to these insurers. They discuss how it's important to consumers. It's important to all Americans. Now, if you look at the mailer here, on the lower right-hand side, where if the consumer does not want to call, but they'll write in, on the right it says, would you like an inquiry about homeowner's insurance? Would you like an inquiry about life insurance? Now, there's no statutory authority for a carrier, an automobile insurer, to take a look at the consumer report. It must then statutorily make a firm offer of insurance. In this case, they claim auto. But then also solicit these creditworthy people that they've looked at their reports on for life and homeowners. When it may turn out that the defendant in this case, State Farm Mutual Auto, does not even issue life and does not even issue homeowners. We contend that this is, and it's alleged, we have contended it below in the complaint, paragraph 13, the record 9A, in our brief below, record 110A, that what this mailer is, is just a marketing program for State Farm companies, generally, to market its varied insurance products, life, auto, homeowners. The problem is there's no statutory authority to look at someone's credit report for the purposes of marketing one or three of your products. And if it's coupled with a bona fide offer? Your Honor, the legislature didn't or Congress didn't say, you can take a peek at the credit report, make a firm offer, and then use the information for statutorily impermissible. But that's not really a fair statement of what, if they can make a firm offer, they can make a firm offer. The fact that that lets them look at the credit report, if given that authority they include in their offer solicitations for other kinds of business, how does that run afoul of the statute? I think what it does is it lets this carrier here put itself at a competitive advantage by using as a pretext to make other impermissible solicitations using credit information, the homeowner and the life, take the auto, and I say it's an offer without value, but what would metropolitan life insurance say who hasn't had the benefit to look at and identify these credit worthy people and hit them with a mailer? What would all state homeowners say? You see, they're taking a permissible purpose, and that's a pre-printed form, and they care, I mean, if anyone's made pre-printed forms, you lay it out, you select what words you're going to put on there, that's a knowing decision to add those two little check marks down there when they have no authority to do that. And we have been saying that it's a part of a marketing program, and they say it's an offer. We understand. Thank you, Your Honor. Any questions? We'll have you back on remittal. Thank you, Mr. Larkin. Ms. Dawson? Good morning. Good morning. May it please the Court, my name is Carrie Dawson. I represent Appalee State Farm. Your Honor, the only issue raised on appeal by Appalent is whether or not the Court erred in ruling that State Farm had a permissible purpose to obtain Appalent's credit report without his permission, pursuant to the Fair Credit Reporting Act. He contends that the District Court erred in concluding the State Farm mailer constituted a firm offer of insurance. It's very telling, Your Honor, that the allegations in the complaint below focused solely on the State Farm mailer, and the specific allegations in the complaint found at Record 12A was that the State Farm mailer was not a firm offer of insurance within the meaning of the Fair Credit Reporting Act, because one, the offer was vague and totally lacking in terms, and it had no value beyond the solicitation of business, and two, the offer did not have the requisite disclosures being clear and conspicuous. On appeal, Appalent has raised issues regarding pre-selected criteria, issues regarding check boxes that were provided on the firm offer of insurance on the mailer. None of these issues were raised below in the District Court. The only issue that the Appalent raised with respect to whether or not State Farm complied with the Fair Credit Reporting Act was the mailer itself. And in fact, Your Honor, it is telling that in his Appalent briefing at page 9, Appalent says the proper focus and the content is the content of the mailer, the four corners of that document, and he cites to the Bruce V. Key Bank National Association case. And therefore, Your Honor, we believe that looking at the mailer itself and looking at the statutory definition of firm offer of insurance, State Farm has complied with the Act, and the District Court correctly ruled that a firm offer was made. First of all, Your Honor, If you read this, had I read only the mailer and not had to get into the minutiae of this statute the way I have to, it seems to me to be a no-brainer that this is a solicitation. It talks about the glory of State Farm, how many folks it insures, it gives comprehensive discounts, competitive rates, answer your question anytime by phone or online or at my office, exceptional claim handling, anyone can offer you a good price, but no one takes care of you like State Farm. Well, that sure sounds like a solicitation to me, a very good one. Your Honor, again, we refer to the plain language of the statute. Unlike the case, for example, of State Farm, excuse me, Safeco v. Burr in the U.S. Supreme Court, where the Supreme Court looked at the common law and determining what was a willful violation of the Fair Credit Reporting Act, this is a different situation. This is a situation where the explicit definition within the Fair Credit Reporting Act sets forth what constitutes a firm offer of insurance. And in fact, because of that explicit definition, that precludes the operation of a common law definition of offer. So that Congress's definition points to a meaning distinct from the common law definition of offer. That has been followed by the case of Dixon v. Shamrock Financial in the Third Circuit, which affirmed a motion to dismiss, finding that prescreened mailer did make the firm offer of credit. So the firm offer of credit or insurance does not require that the offeror include additional terms other than the preselection criteria, which is clearly set forth in the State Farm mailer. Where is that? Where is the preselection criteria in the mailer? The preselection criteria, Your Honor, it states, and if you look at the record, it's Record 26A, and it states, this prescreened offer of insurance is based on information in your consumer reports, including your credit report, indicating that you meet certain eligibility criteria. This offer is not guaranteed if you do not meet... Whatever, whatever. I mean, to the extent that you're arguing that the solicitation here, or the offer contains within it the criteria that were used to delve into the credit records, all this says is that we have some criteria, and you meet those criteria. But we're nowhere in here to say anything about what the criteria are that would suggest to State Farm that they could look at the credit report to find out whether or not, more specifically, this person meets those criteria, just says we have some criteria. Your Honor, the statutory definition of what constitutes a firm offer of insurance does not require that the criteria be disclosed. In fact, Your Honor, from a matter of public policy, that actually delves into some of the algorithms or specific trade secrets of given companies, because what one company might say their criteria is in terms of a credit score of 650 or above, or a credit score of 450 or above. That doesn't have to be disclosed on the offer itself. In fact, the definition of prescreened offer of insurance states, an offer of credit or insurance to a consumer that will be honored if the consumer is determined based on information and a consumer report on the consumer to meet the specific criteria used to select the consumer for the offer. Except that the offer may be further conditioned on one or more of the following, and then there'd be additional criteria that the offeror can place on the final decision as to whether or not the person or the property can be insured. So there's nothing in the statute that Congress said that you have to explicitly state what the preselection criteria are. There must be preselection criteria, and in making the offer, the offeror, the insurance company must honor that guarantee of insurance, though they may further condition it. But there's nothing in the statute that says you have to state in the mailer, this is what the preselection criteria are. But if you're right, why wouldn't any company then be able to say that, send out solicitations for business, preface by this statement that we have some preselected criteria based upon your credit report. You may meet our criteria for insurance based upon some other information and then put in all these wonderful things about the glory of the company. In the meantime, this would basically allow any company with no criteria at all to simply make a one little sentence statement in their solicitation or offer that they have some criteria. Look at credit reports and then decide who they're going to solicit. There's nothing in what you're arguing to prevent that, if that's what the Act means. Well, Your Honor, I think you have to divide between what the statutory definition of a firm offer is and whether or not a company could be found liable for violating the Fair Credit Reporting Act because it did not honor that offer. Your opponent is arguing that at the 12B6 level, he can never cross that bridge because he can't get discovery to find out whether or not there are any criteria or whether or not that's just some language cranked out of your computer to put on the mailer that goes out. He's saying, at least let me find out if there are any free screen criteria. Your Honor, the allegations that the plaintiff made below the appellant here was that the mailer itself had no value, that it was vague and ambiguous. And therefore, Your Honor, there was no issue raised below that Mr. Gelman responded within the 60 days, made an application for insurance, was denied his application for insurance, and therefore there was a question as to whether or not the offer of insurance was, in fact, a firm offer or guarantee, in which case that might raise a question as to whether or not there was some sort of no ballot preselection criteria whatsoever. So the issue isn't raised. In the insurance context, it seems to me that anyone is going to be able to get insurance. The question is going to be, you could find someone who's terminally ill who can get insurance but it's going to cost them an arm and a leg. And you know more about the industry than me, and correct me if I'm wrong about that. But in fact, I received the other day, the federal plan for long-term insurance allows my grandmother to qualify for long-term insurance. She's 92 years old. I hesitate to think what the premium of that policy is going to be, but she can get it. And I say all that to say that it's kind of misleading in the insurance context because anyone, if they're willing to pay enough, I would assume, will be issued a policy of insurance. It just may not be affordable to them. That's not correct, Your Honor. There are, in fact, instances where there are eligibility criteria that not everyone can get automobile insurance with state farm. That's not true. So it cannot be... Is the firm charged by a driver record or that kind of thing? Your Honor, it would have to do with the driving record. It may be a possibility for why you can't get insurance. It could be a possibility of the claims history of that individual. They may not be capable of getting insurance. So it is not a fact. And that's, in fact, it's not, in fact, true that anyone can get insurance at any price with state farm, such that Mr. Gelman was found to have satisfied the preselection criteria, and that's why he was given a firm offer of insurance. There are other citizens throughout this country that did not get the mailer that Mr. Gelman received. They did not get it because it was found that they did not satisfy that criteria. I didn't get one. I shouldn't take that personally? You should not take that personally, Your Honor. Mr. Laughlin urges upon us the Cole case from the Seventh Circuit. Should we look seriously to that case in terms of finding some value requirement here? Your Honor, Cole was specifically addressed in the subsequent Seventh Circuit decision of Murray v. New Singular Wireless Services. Even the Seventh Circuit has cabined Cole to a great extent. It certainly has, Your Honor. In fact, even before the Seventh Circuit revisited its Cole opinion and found that that only applied in instances where you had a mixed offer of merchandise and credit as opposed to a pure offer of credit or a pure offer of insurance, and they drew a distinction there. But even before that, Cole and the value approach was really the minority position. Other circuits and other district courts had said, let's start with the basic tenets of statutory construction. And we look at the U.S. Supreme Court, Barnhard v. Sigmund Cole, when the words of a statute are unambiguous, then this, the first canon, is also the last. Judicial inquiry is complete. The Third Circuit has followed suit in Prisco v. Talte, 1993 Circuit decision, where you all stated the first maxim of statutory interpretation is that a statute's facial language is conclusive. And here, the facial language is conclusive as to what was required by State Farm in its mailer. And that was to make a firm offer, one that, again, could be further conditioned, pursuant to the express language of 15 U.S.C. 1681 A.L. And here, Your Honor, we find that in following strict statutory construction, State Farm made a firm offer, value is not required, definitive terms are not required. All of this was addressed squarely in the Murray case by the Eighth Circuit and the Pohl decision, and also by the First Circuit, excuse me, in the decisions of Dixon v. Shamrock Financial and Sullivan v. Greenwood. Even, would there be a difference in terms of what constitutes an offer when we're talking about a loan as opposed to an insurance policy under the statute? Under the statute, the two are treated identically in terms of what constitutes a firm offer of insurance or credit. The issues that we raised and why we appended and the court took properly judicial notice of the Federal Reserve Board is one of the main arguments that was made below, was that, well, there are no material terms in this offer. Where is the specificity with respect to this offer? And what the Federal Reserve Board aptly and correctly noted is that there's not enough information in the credit report itself to put, for example, what your premium is going to be. Because at that time, all we know is something about the credit worthiness. We don't know anything about the property or risk to be insured. And therefore, and the Pohl case and the Sullivan case and the Murray case all also address this point, that initial contact, it's contemplated there would be further contact necessary to get the information to reach an issue such as price. And so in terms of drawing any distinctions between credit and insurance, what the Federal Reserve Board notes is, especially not knowing what the property is, there are certain terms such as price, all the coverages that you couldn't have in the initial offer itself. And that's where there may be a distinction between credit and insurance with an understanding that in the credit report, there may be more information that would allow slightly more specificity to be in the offer. Now, all of that makes sense, but none of it comes from the statute. That is correct. And, Your Honor, in fact, we believe you don't have to even draw that distinction between credit and insurance to affirm the district court below. Because if you look at the statutory definition of what constitutes a firm offer of insurance, clearly the mailer on its face satisfies the statutory definition. So even if the insurance company, this is on a different issue, even if the insurance company has terms that are, let's say, so onerous that it would be very difficult to qualify after this firm offer, there would be, in that particular kind of case, there would be no way to get past a motion to dismiss for failure to state a cause of action, right? Well, Your Honor, I think, let me make sure I understand your question. If, in fact, passed the first stage, then we go to the second stage in which they say further conditions can be imposed. One is that the consumer is determined, based on information in the application, to meet the specific criteria bearing on insurability. In that case, Your Honor, I think you would have to, it would be a different situation from our case, you'd have to look at the record and say, was this person denied insurance because they didn't meet the underwriting criteria necessary in order to be written with the company, versus they met the criteria, but they were somehow denied the insurance in any event, but yet had received an offer. And so, and those are two different situations there, and there may be a situation where you could get past the motion to dismiss stage, but that's not the case here, Your Honor. I understand, but I'm trying to think legally how you get past the motion to dismiss, how you get to that particular discovery. Well, you would have different allegations, obviously. And that's precisely the point when there's a reference to the Murray decision and the Bruce v. Key. There were two Murray decisions. This is the Murray v. New Singular Wireless Services opinion. That was referenced where he said that there was some question raised as to why the discovery wasn't pursued. Well, really that issue squarely addressed in the Dixon v. Shamrock case, the First Circuit raised, where the First Circuit aptly noted, here there are no allegations that Dixon or any other consumer was denied credit by Shamrock, despite meeting Shamrock's internal criteria, or that Dixon or any other consumer would have been denied credit had they contacted the company. So that's a very different case, Your Honor, when those are the specific allegations as opposed to here, where by the plaintiff's appellant's own admission at page 9 of their brief, the relevant question is looking at the four corners of the document, as opposed to him having asserted allegations about applications or denials. Anything further? No? Good. Ms. Dawson, thank you very much. Thank you. Mr. Loughran. There are two Murray cases, and the case that... Why don't you raise this up a bit? You're talking GMAC. The case that I was referring to earlier that they submitted is the Murray v. New Singular, the new one, that has the Bruce v. Keybank inside of it. Now, I guess there's no other way that a plaintiff can allege that the defendant was not engaged in statutorily permissible conduct in making a firm offer and having the prerequisite criteria established. The plaintiff thought that he or she should qualify for insurance, maybe at some higher rate based upon a rating on some health issue, but should qualify nevertheless, and it's turned down. It's not hard to bring in a complaint which simply says that you believe in good faith that you qualified for the insurance at a preliminary level, and you were denied it, and therefore the solicitation that was sent out stating that you were selected pursuant to certain eligibility criteria is a sham. You weren't selected in that manner at all, but this is a random solicitation based upon information in your credit report that is improperly brought. If the factual basis is there for that, you can very easily make that complaint. My client, Your Honor, doesn't want to apply to State Farm for insurance and enjoys his privacy in keeping his consumer information quiet. Now, whenever a corporation violates a statute, snoops into his credit report, the citizen should not be compelled to then slavishly go through this process and then get denied or probably accepted because his credit is so good and then have to sue them and say it was all sham to begin with. Well, you may be right. But it seems to me you need to address that with the Congress because the way the statute is drafted. No, because I think the Court should be attentive to this. These criteria and counsel, and I have the definition right here, counsel three times read the statute, the consumer being determined based on information in the consumer's application for the insurance to meet specified criteria bearing on insurability. And she stopped. And it continues, as applicable that are established, A, before selection of the consumer for the offer. Okay, you're arguing the solicitation as you're referring to it says that the offer of insurance is based on information in your credit reports, including your credit report indicating certain eligibility criteria. Right. So you're saying that the offer itself is not based upon the initial internal criteria that would allow you to look at the credit report, but based upon the credit report itself. Yeah, the carrier makes a listing of criteria that they're going to have the consumer meet. They call the credit company and say give us everybody with a score of 750 and they get a list of names and addresses. So now they've taken the peak. And so they solicit out to these folks with that score and you call in. I then have to ask you these questions to meet my predetermined selected criteria. And if you meet it, then I've got to make a firm offer. And depending on your answer, how many kids do you have, how many cars do you have, et cetera, it's all mapped out before you. How is that different than what happened here as far as we know? What has happened here is where is our record that they had any of that criteria? She is alleging, and she will speak for herself much better than me, she's a very able counsel. She is alleging that the way the statute is worded, they don't have to disclose their criteria as long as there are criteria and that your complaint does not go to the kind of defect that you're now arguing. And your complaint arguing they didn't have these criteria, it's a shame to look at my report, but that in the same brief, your brief talks only about value, that this offer was solicitation, however you want to refer to it. You're saying that this mailing is not an offer because it lacks value. That's the whole first of your brief. I believe, Your Honor, value is mentioned in the brief in the core argument. Throughout the records, throughout the complaints, throughout the district court, and in our brief here, if I may just grab my book. I apologize for that. We have consistently taken the position that this mailer is something that is not being mailed out pursuant to the statutorily permissible purpose. Because it lacks value. No, because it's part of a marketing program and it is not a mailer that is making a firm offer of insurance. See, firm offer is defined with the first two words, equals any offer. And they make a joke about the way I wrote my brief here, but whenever you have firm offer defined with the words, is any offer, the court still has to know what the word offer means in the definitional part of what is a firm offer. And you're going to revert to what is an offer. It's something that has to be, that can be accepted. So if you look at the four corners of this mailer, Bruce Gelman couldn't say I accept. So then you get into, well, are these statutory criteria established and set up? We claim no. We claim that this mailer is just part of a auto life homeowner solicitation where they've cherry picked off people with good credit and they're soliciting them under the pretext of the firm offer of insurance. Guys, I can never prove that unless I can get past 12b-6. I think we understand. Thank you, Your Honors. The case was very well argued by both sides. The court would like to have a transcript of the oral argument. I would ask that you check with the clerk's office before you leave today to arrange for that and to share the costs of that for the benefit of the court. We'll take the matter under advisement. Thank you very much.